Dallas R. MORGAN, Plaintiff,

v.

ARIZONA DEPARTMENT OF CORRECTIONS, et al., Defendants.

No. CIV–96–1357–PCT–ROS.

United States District Court, D. Arizona.

Aug. 13, 1997.

Dallas Morgan, Florence, AZ, pro se.

Teresa Merri Hall, Attorney General's Office, Asst. Atty. Gen., Phoenix, AZ, Cynthia Renee Estrella, Asst. Atty. Gen., Phoenix, AZ, for Defendants.

## AMENDED ORDER

SILVER, District Judge.

## BACKGROUND

On June 5, 1996, Plaintiff Dallas R. Morgan, imprisoned and proceeding *pro se* and *in forma pauperis,* commenced this action pursuant to 42 U.S.C. § 1983 against: (1) Arizona Department of Corrections ("ADOC"); (2) George Herman; (3) Terry Stewart; (4) W.R. Willis; (5) Lieutenant Mariotti; (6) Lieutenant Melcher; (7) Sergeant Alexander; (8) Sergeant Herzog; (9) Captain Garvin; (10) CSO T. Lester; (11) Sergeant Connor; and (12) Lieutenant Ingram.

Plaintiff claims that ADOC initiated a threat to his safety while he was incarcerated at Arizona State Prison Complex–Winslow by telling other inmates that he was homosexual and a child molester. (Compl. at 5.) CSO T. Lester allegedly announced "to the whole dorm" that Plaintiff had been reported for homosexual activity. *Id.* at 10. Plaintiff alleges that this directly threatened his safety within the prison. *Id.* at 5. To illustrate, on May 22, 1996, Plaintiff requested protective segregation. On May 23, ADOC officers placed another inmate, Sanchez, into Plaintiff's cell. Sanchez allegedly told ADOC Sergeant Connor that he would hurt Plaintiff. *Id.* at 7. However, ADOC officials refused to move Plaintiff or the other inmate. That same day, Plaintiff filed his first Inmate Letter requesting physical protection and was later assaulted by Sanchez.

Plaintiff asserts that Lieutenant Mariotti told him that ADOC officials had received the Inmate Letter requesting protection, but that Plaintiff's request was refused. *Id.* at 9. ADOC officials proceeded to place two other successive inmates into Plaintiff's cell. *Id.* Upon the arrival of his third cellmate, Plaintiff attempted to cut his wrist with a razor blade. *Id.*

Plaintiff had filed three Inmate Letters dated May 23rd, 30th, and June 3rd requesting that the prison staff protect him from other inmates by the time he filed his Complaint. *Id.* Although ADOC's Internal Management Policy ("IMP") 103.3.2.6.9.2 states that the CPO shall "[p]rovide a response to the inmate, on an Inmate Letter Response Form ... within ten workdays of receipt of the complaint," Plaintiff claims that he did not receive a reply to his requests until June

17, 1996. (Compl. at 10.) Plaintiff admits in his Complaint that he did not continue to seek relief through the grievance procedure of his institution. *Id.* at 4. He refused to follow ADOC's grievance system because it would allegedly provide no "resolution" to the assault. *Id.* Furthermore, Plaintiff claims that the assault cannot be construed as a "prison condition." (Pl.'s Mem. Opp'n Mot. Dism. at 2.) Plaintiff argues that ADOC officials deliberately failed to ensure his safety after other inmates displayed a strong response to Plaintiff's homosexual and child molester status. (Compl. at 5.) Plaintiff seeks protective custody, $25,000 in compensatory damages, $50,000 in punitive damages, and $50,000 for negligence and deliberate indifference. *Id.* at 6.

On July 31, 1996, this Court dismissed the following Defendants from the case without prejudice: (1) ADOC; (2) Herman; (3) Stewart; (4) Willis; (5) Alexander; and (6) Garvin.

On September 23, 1996, the remaining Defendants, Mariotti, Connor, Melcher, Ingram, Herzog, and Lester, moved to dismiss the Complaint pursuant to Fed.R.Civ.P. 12(b)(1) for failure to exhaust administrative remedies pursuant to 42 U.S.C. § 1997e(a). Defendants asserted that under this statute the Court lacked subject matter jurisdiction and was required to dismiss the Complaint.

On October 15, 1996, Plaintiff moved for leave to file an Amended Complaint. Magistrate Judge Stephen L. Verkamp initially construed the Amended Complaint as naming as party Defendants: (1) Terry Stewart; (2) George Herman; (3) W.R. Willis; (4) Lieutenant Melcher; (5) Lieutenant Mariotti; (6) Lieutenant Ingram; (7) Sergeant Connor; (8) Sergeant Alexander; (9) Sergeant Herzog; (10) Sergeant Ligon; and (11) CSO T. Lester. On February 5, 1997, Magistrate Judge Verkamp granted Plaintiff's request and allowed the filing of the Amended Complaint. On April 9, 1997, Plaintiff moved for clarification asserting that he had also named Captain Garvin and CPO Baltiara as party Defendants. On June 2, 1997, Magistrate Judge Verkamp granted Plaintiff's motion and construed the Amended Complaint as naming Garvin and Baltiara.

Meanwhile, on December 17, 1996, Defendants Mariotti, Connor, Melcher, Ingram, Herzog, and Lester moved to dismiss the Amended Complaint on the same basis as the motion to dismiss the original Complaint. On April 14, 1997, Defendants Stewart, Herman, Willis, and Ligon, added as party Defendants through the Amended Complaint, joined in Defendants' motion to dismiss the Amended Complaint. On April 17, 1997, Defendant Alexander also joined the dismissal motion.

## DISCUSSION

■ On April 26, 1996, the Prison Litigation Reform Act of 1996 ("PLRA"), Pub.L. No. 104–134, 110 Stat. 1321–71 (codified as amended at 42 U.S.C. § 1997e), made exhaustion provisions of 42 U.S.C. § 1997e(a)[1] mandatory, rather than directory.[2] The two legislative goals of the PLRA are to curb frivolous prisoner lawsuits and to discourage courts from micro-managing prison systems. *Zehner v. Trigg*, 952 F.Supp. 1318, 1324 (S.D.Ind.1997); Kathryn Ericson, *Prison Litigation Reform Act Gets Bumpy Start, According to Congressional Testimony*, West's Legal News, Oct. 7, 1996, at 1. According to Senate sponsor Orrin Hatch, the PLRA "will help bring relief to a civil justice system overburdened by frivolous prisoner lawsuits.... Our legislation will also help restore balance to prison conditions litigation and will ensure that Federal Court Orders are limited to remedying actual violations of prisoners' rights." 141 Cong. Rec. S14, 408

---

1. Section 1997e(a) states:
   No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.
   42 U.S.C. § 1997e(a).

2. Directory is defined as a "provision in a statute which is a mere direction or instruction of no obligatory force, and involving no invalidating consequence for its disregard, as opposed to an imperative or mandatory provision, which must be followed." Black's Law Dictionary 460 (6th ed. 1990).

(daily ed. Sept. 27, 1995) (statement of Sen. Hatch).

■ Because exhaustion is now mandatory, rather than directory, courts do not possess the discretion to provide continuances in the absence of exhaustion. As illustrated in *Francis v. Marquez*, 741 F.2d 1127 (9th Cir.1984), under the previous version of § 1997e,[3] if a court found that an exhaustion requirement was appropriate, it could order a continuance for a period not to exceed 180 days to require exhaustion. *Id.* at 1128. The PLRA amended the language and logic of former § 1997e by explicitly abandoning the provision that allowed a court to continue a case for a period not to exceed 180 days. By omitting this language, prisoners must now exhaust any available administrative remedies before bringing their actions. *Wright v. Morris*, 111 F.3d 414, 417 (6th Cir.1997). When the exhaustion of administrative remedies is required by federal statute, the failure to exhaust is a jurisdictional defect that prevents the district court from hearing the claim. *Bell v. Calderon*, No. C 96–4398 SI, 1997 WL 168564 (N.D.Cal.1996); *Jerves v. United States*, 966 F.2d 517, 519 (9th Cir.1992) (stating that the exhaustion requirement of Federal Tort Claims Act is jurisdictional and may not be waived).

■ In *Eakins v. Madrid*, No. C 96–2229 SI, 1996 WL 743812 (N.D.Cal.1996), the defendants filed a motion to dismiss on the ground that the plaintiff failed to exhaust administrative remedies. The court, unaware of the plaintiff's knowledge of the exhaustion requirement, gave the plaintiff 30 days to amend his complaint. Instead of granting him an extended opportunity to exhaust, the court allowed the plaintiff 30 days for the limited purpose of proving that he did exhaust his remedies. The court stated: "Plaintiff must allege facts in his amended complaint to show that he filed administrative grievances in prison and appeals at every allowable level for each incident of wrongful conduct alleged in the complaint." *Id.* at *1. In the instant case, Plaintiff's Amended Complaint illustrates that he failed to proceed with ADOC's grievance system. (Am. Compl. at 4.) Pursuant to the logic of *Eakins*, because this Court is certain that Plaintiff was aware of ADOC's exhaustion requirement, it will not grant 30 days to further amend the Amended Complaint.

■ Plaintiff, however, argues that he could not exhaust ADOC's grievance system because he had to wait for a response before he could file a formal grievance. (Pl.'s Mem. Opp'n Mot. Dism. at 1.) In *Hernandez v. Steward*, No. 96–3222–SAC, 1996 WL 707015 (D.Kan.1996), the District Court of Kansas dismissed an action for failure to exhaust the administrative remedies of the correctional facility. The court stated: "The plaintiff's explanation of the steps he took towards exhaustion shows his efforts were incomplete.... As for his excuse that 'they never' replied, the plaintiff was still obligated to pursue all levels of the administrative scheme." *Id.* at *2. Similarly, Plaintiff claims that he could not file a formal grievance due to ADOC's untimely response. IMP 103.3.2.6.14.3 provides, "Expiration of the time limit at any level in the process shall entitle the inmate to proceed to the next level unless the inmate agrees in writing to an extension." Like the plaintiff in *Hernandez*, Plaintiff here must pursue all levels of ADOC's administrative procedure, even if ADOC's response was untimely. Plaintiff's claim therefore fails.

■ Plaintiff also argues that he did not use ADOC's grievance system because the assault did not constitute a "prison condition" under the language of 42 U.S.C. § 1997e (a). (Pl.'s Mem. Opp'n Mot. Dism. at 2.) Defendants correctly admit that § 1997e does not define "prison conditions," but adopts the language of 18 U.S.C. § 3626g(2) (which was part of the PLRA) for a definition. Section 3626g(2) states:

---

3. The previous version of § 1997e(a)(1) provided: Subject to the provisions of paragraph (2), in any action brought pursuant to section 1983 of this title ... the court shall, if the court believes that such a requirement would be appropriate and in the interests of justice, continue

such case for a period of not to exceed 180 days in order to require exhaustion of such plain, speedy, and effective administrative remedies as are available.

42 U.S.C. § 1997e (a)(1).

(2) the term "civil action with respect to prison conditions" means any civil proceeding arising under Federal law with respect to the conditions of confinement or the effects of actions by government officials on the lives of persons confined in prison. . . .

18 U.S.C. § 3626g(2). Plaintiff's action, which arises under federal law, clearly encompasses the effects of actions by government officials. Based on this definition, Plaintiff's contention that he need not exhaust his administrative remedies because the action was not a "prison condition" also fails.

█ Plaintiff conceded in his Amended Complaint that he did not exhaust his administrative remedies. (Am. Compl. at 4.) Plaintiff could have filed a staff grievance pursuant to IMP 103.3.2.6.18 and an administrative remedy request for placement in protective segregation pursuant to IMP 304.10. Plaintiff could have filed a formal grievance with the Institutional Grievance Coordinator [4], followed by an appeal to the Prison Director. According to the plain language of 42 U.S.C. § 1997e(a), Plaintiff's failure to file an initial grievance or a request for administrative remedy deprives this Court of subject matter jurisdiction over this dispute. Defendants' Motion to Dismiss will therefore be granted. The Amended Complaint will be dismissed without prejudice to refiling after Plaintiff exhausts his administrative remedies. *Troxell v. McGarth*, No. C 96–3812 TEH, 1996 WL 637857 (N.D.Cal.1996).

Accordingly,

**IT IS ORDERED** that Defendants' Motion to Dismiss the Amended Complaint (Document # 30) is granted without prejudice.

**IT IS FURTHER ORDERED** that Defendants' Motion to Dismiss the original Complaint (Document # 19) is denied as moot.

4. ADOC's Inmate Grievance System distinguishes between an Inmate Letter (which Plaintiff filed) and a formal grievance. IMP 103.3.2.6.8.6.1 states that inmates shall "[a]ttempt to resolve a complaint informally prior to filing a formal grievance by submitting the complaint to their assigned Correctional Program Officer on an Inmate Letter, ADOC Form # 70501168A. . . ." Formal grievances, however, must be filed by a GF–1 Form. IMP 103.3.2.6.8.6.2 provides that after filing an informal Inmate Letter, inmates shall "[s]pecify in writing, in Section B of ADC Form GF–1, the reason why the complaint remains unresolved and attach the inmate letter and response which indicate the attempts at informal resolution."