Sergio DIEZCABEZA, Plaintiff,

v.

John E. LYNCH, Robert M. McCarroll,
McFarlin Defendants.

No. 97 Civ. 8991(SHS).

United States District Court,
S.D. New York.

Nov. 29, 1999.

Sergio Diezcabeza, Pine City, NY, pro se.

Garvin V. Smith, Asst. Atty. Gen., New York City, for defendants.

## *OPINION*

STEIN, District Judge.

Sergio Diezcabeza brought this action pro se pursuant to 42 U.S.C. § 1983, alleging that defendants John E. Lynch, Robert McCarroll, and an individual denominated as "McFarlin" violated plaintiff's Eighth Amendment right to be free from cruel and unusual punishment. Defendant Lynch has moved for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c) on the grounds that plaintiff failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act of 1996 (PLRA).[1] For the reasons set forth below, defendant's motion is granted.

## I. Background

Plaintiff, currently an inmate at the New York State Department of Correctional Service facility in Elmira, New York, alleges that while he was an inmate at the Fishkill Correctional Facility he was brutally beaten by the defendants, who were correctional officers at that facility. He allegedly suffered serious injuries, including a broken foot and broken nose.

As noted above, Lynch has now moved for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c) on the grounds that plaintiff has failed to exhaust his administrative remedies prior to bringing suit. Because Diezcabeza did not file a response to that motion, he was directed to show cause why the motion should not be granted.

---

1. Plaintiff originally sued Lynch only; he subsequently amended his complaint to add McCarroll and McFarlin as defendants. However, the latter two individuals have not yet been served with the summons and the amended complaint.

Plaintiff subsequently submitted a letter to the Court which shall be construed liberally, *see McPherson v. Coombe,* 174 F.3d 276, 280 (2d Cir.1999), and shall be deemed to be plaintiff's response to Lynch's motion.

## II. Discussion

Pursuant to the Prison Litigation Reform Act of 1996, which amended 42 U.S.C. § 1997e(a), *see* Pub. L No. 104–134, 110 Stat. 1321 (codified at 42 U.S.C. § 1997 (West Supp.1998) and 18 U.S.C. § 3626 (West Supp.1998)), "no action shall be brought with respect to prison conditions under section 1983 or any other federal law ... until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Prior to the PLRA, it was not mandatory that the prisoner exhaust his administrative remedies prior to commencing litigation and the exhaustion requirement itself was limited to actions brought pursuant to section 1983.[2] The PLRA extended the scope of the exhaustion requirement to actions brought pursuant to section 1983 and "any other Federal law," whereas the previous version applied only to section 1983 claims.

■ The gravamen of plaintiff's complaint is that defendants used excessive force in violation of Diezcabeza's Eighth Amendment right to be free from cruel and unusual punishment. The issue before this Court is whether the PLRA's mandatory exhaustion requirement applies to claims of excessive force, an issue about which numerous courts have disagreed. *See Liner v. Goord,* 196 F.3d 132, 135–135 (2d Cir. 1999) (noting that the law in this area is in "great flux"). Several courts have held that a plaintiff's administrative avenues of redress need not be exhausted for actions based on excessive force because they are not "action[s] ... with respect to prison conditions," and therefore

are not covered by the PLRA's mandatory exhaustion requirement. *See Baskerville v. Goord,* No. 97 Civ. 6413, 1998 WL 778396, at*3–*5 (S.D.N.Y. Nov. 5, 1998; *White v. Fauver,* 19 F.Supp.2d 305, 312–15 (D.N.J.1998); *Rodriguez v. Berbary,* 992 F.Supp. 592, 593 (W.D.N.Y.1998); Johnson v. O'Malley, No. 96 C 6598, 1998 WL 292421, at*3 (N.D.Ill. May 19, 1998).

Other courts have found that the phrase "action ... with respect to prison conditions" should be interpreted to encompass excessive force claims and that as a result excessive force claims may not proceed in federal court until any administrative remedies have been exhausted. *See Beeson v. Fishkill Correctional Facility,* 28 F.Supp.2d 884, 888 (S.D.N.Y.1998); *Johnson v. Garraghty,* 57 F.Supp.2d 321, 322–323 (E.D.Va. 1999); *Moore v. Smith,* 18 F.Supp.2d 1360, 1362–63 (N.D.Ga.1998); *Morgan v. Arizona Department of Corrections,* 976 F.Supp. 892, 896 (D.Ariz.1997).

■ The phrase "action ... with respect to prison conditions" is not defined in 42 U.S.C. § 1997e(a). However, this phrase is defined in 18 U.S.C. § 3626, which was enacted as part of the PLRA. *See* Pub.L. No. 104–134, § 802(a), 110 Stat. 1321, 1321–70 (1996). Section 3626(g)(2) states, in relevant part, that

> the term "civil action with respect to prison conditions" means any civil proceedings arising under Federal law with respect to the conditions of confinement or the effects of actions by government officials on the lives of persons confined in prison, but does not include habeas corpus proceedings challenging the fact or duration of confinement in prison.

This definition clarifies that the term "prison conditions" broadly includes "the effects of actions by government officials on the lives of persons confined in prison,"

2. Prior to the enactment of the PLRA the relevant portion of 42 U.S.C.A. § 1997e(a) provided that "in any action brought pursuant to section 1983 of this title by [a prisoner], the court shall, if the court believes that such a requirement would be appropriate and in

the interests of justice, continue such a case for a period of not to exceed 180 days in order to require exhaustion of such plain, speedy, and effective administrative remedies as are available." 42 U.S.C.A. § 1997e(a)(1)-(2)(1994).

as well as actions challenging the "conditions of confinement." Excessive force by correctional officers most assuredly constitutes the "effects of actions by government officials on the lives of persons confined in prison." *See Moore,* 18 F.Supp.2d at 1363; *Morgan,* 976 F.Supp. at 895–96.

■ In interpreting section 1997e(a)'s exhaustion requirement, it is appropriate for this Court to draw upon the statutory definition contained in 18 U.S.C. § 3626. Identical language used in different parts of the same statute should be interpreted to have the same meaning. *See Mertens v. Hewitt Associates,* 508 U.S. 248, 260, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993) ("[L]anguage used in one portion of a statute [ ] should be deemed to have the same meaning as the same language used elsewhere in the statute."); *United Savings Association of Texas v. Timbers of Inwood Forest,* 484 U.S. 365, 371, 108 S.Ct. 626, 630, 98 L.Ed.2d 740 (1988) ("A provision that may seem ambiguous in isolation is often clarified by the remainder of the statutory scheme—because the same terminology is used elsewhere in a context that makes its meaning clear.").

■ Relying on this canon of statutory construction, the phrase "prison conditions" should be interpreted consonant with Congress's express definition of the phrase elsewhere in the same statute. *See Beeson,* 28 F.Supp.2d at 888 ("When Congress, in one statute, uses the same words in two different places, those words should generally be read to mean the same thing in both places.") (citing *Baggett v. First Nat'l Bank of Gainesville,* 117 F.3d 1342, 1350 (11th Cir.1997)). Indeed, section 3626's definition is "the best indication of what Congress intended when it used the term 'action ... with respect to prison conditions' in 1997e(a)." *Moore,* 18 F.Supp.2d at 1363.

Those courts that have read section § 1997e(a) more narrowly have in general proffered three reasons for doing so.

First, they have held that although the literal meaning of the statutory phrase "effects of actions by government officials on the lives of persons confined in prison" encompasses excessive force claims, nonetheless such a reading "ignores the purpose and context" of 18 U.S.C. § 3626, which was enacted in order to prevent the courts from "micromanaging the prison system" and "usurping the authority given to prison administrators to decide matters of routine prison administration." *See Baskerville,* 1998 WL 778396, at *4 (S.D.N.Y. Nov. 5, 1998). Accordingly, they argue, this definition does not apply to claims of excessive force because "resolution of such claims by the courts does not, ordinarily, implicate the routine, orderly administration of prisons." *See id.*

■ That reasoning is not persuasive. The plain meaning of the definition must govern in the absence of statutory ambiguity or direction from Congress. *See Greenery Rehabilitation Group v. Hammon,* 150 F.3d 226, 231 (2d Cir.1998); *United States v. Kelly,* 147 F.3d 172, 175 (2d Cir.1998). Accordingly, this Court should only look to legislative history – often ambiguous and indeterminate – when the meaning of a phrase or term in a statute is not clear. *See Olga Coal Co. v. Connors,* 159 F.3d 62, 67 (2d Cir.1998) ("[W]here as here, the meaning of a statutory provision is otherwise unambiguous, resort to legislative history is inappropriate."). The meaning of the phrase, "effects of actions by government officials on the lives of persons confined in prison," is not ambiguous and is literally inclusive of excessive force claims.

Second, courts have argued that because the prior version of section 1997e(a) applied to "any action brought pursuant to § 1983," and now applies only to actions "with respect to prison conditions," "Congress must have meant to reduce the scope of § 1997e(a), otherwise the limiting language would not have 'real and substantial effect.'" *White,* 19 F.Supp.2d 305, 313–314; *see also Carter v. Kiernan,* 1999 WL 14014, at *4 (S.D.N.Y.1999).

While it is true that actions "with respect to prison conditions" are a "subset of

all possible actions," *Baskerville v. Goord,* 1998 WL 778396, at *3 (S.D.N.Y. Nov. 5, 1998), "it does not follow that this subset excludes claims of excessive force." *Beeson,* 28 F.Supp.2d at 889. The fact that the phrase "with respect to prison conditions" was added to the statute does not necessarily indicate which subset of claims Congress intended to cover by means of section 1997e(a), as amended. There are several other ways that the Court could reasonably interpret the addition of this phrase. It could have been added to clarify any confusion that would arise from the fact that the requirement includes claims brought under any federal law; the use of the term "prison conditions" indicates that Congress did not intend to cover claims that arose before the prisoner's confinement or were unrelated to the prisoner's confinement. *See Beeson,* 28 F.Supp.2d at 889. Alternately, the use of the phrase "prison conditions" to delimit the provisions of the PLRA could be interpreted simply as intended to exclude actions challenging the fact or duration of confinement. This reading of the phrase comports with the language of 18 U.S.C. § 3626(g)(2) which states that "the term 'civil action with respect to prison conditions' ... does not include habeas corpus proceedings challenging the fact or duration of confinement in prison." *See* 18 U.S.C. § 3626(g)(2).

Third, courts have relied on two U.S. Supreme Court cases, *Farmer v. Brennan,* 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994), and *Hudson v. McMillian,* 503 U.S. 1, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992), in which the Supreme Court has drawn distinctions between claims of excessive force and claims challenging prison conditions in the Eighth Amendment context. In *Hudson v. McMillian,* the Supreme Court wrote that:

Extreme deprivations are required to make out a conditions-of-confinement claim. Because routine discomfort is part of the penalty that criminal offenders pay for their offenses against society, only those deprivations denying the minimal civilized measure of life's neces-

sities are sufficiently grave to form the basis of an Eighth Amendment violation....

In the excessive force context, society's expectations are different. When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated. *Hudson,* 503 U.S. at 9, 112 S.Ct. 995; *see also Farmer,* 511 U.S. at 832, 114 S.Ct. 1970, 128 L.Ed.2d 811 ("In its prohibition of 'cruel and unusual punishments,' the Eighth Amendment places restraints on prison officials, who may not, for example, use excessive physical force against prisons. The Amendment also imposes duties on those officials who must provide humane conditions of confinement ...." (citation omitted)). Invoking this distinction, courts have held that the term "prison conditions" does not include claims of excessive force and that as such, these claims are excluded from the PLRA's exhaustion requirement. *See Baskerville,* 1998 WL 778396, at **3–4; *White,* 19 F.Supp.2d at 314–15; *Rodriguez,* 992 F.Supp. at 593; *Johnson,* 1998 WL 292421, at *3.

█ These courts are correct that one accepted technique of statutory construction is to consider how courts have used the term in question and assume that Congress legislated with this interpretation in mind. *See McCarthy v. Bronson,* 500 U.S. 136, 140, 111 S.Ct. 1737, 114 L.Ed.2d 194 (1991) ("We certainly presume that in 1976, when Congress selected this language, our elected representatives were familiar with our recently announced opinions concerning prisoner petitions."); *see also Nationwide Mutual Insurance Co. v. Darden,* 503 U.S. 318, 322, 112 S.Ct. 1344, 117 L.Ed.2d 581 (1992) ("Where Congress uses terms that have accumulated settled meaning under ... the common law, a court must infer, unless the statute otherwise dictates, that Congress means to incorporate the established meaning of these terms.").

█ Nonetheless, reliance on *Farmer* and *Hudson* for this purpose is misplaced.

First, while the settled meaning of a term may be instructive in interpreting a statute, Congress can always indicate that a term has a different meaning. In this instance, Congress undertook to define prison conditions to include claims of excessive force in the definitions section of 18 U.S.C. § 3626. Congress's attempt to define the phrase in plain language is the best and most persuasive indication of what the phrase was intended to include. It is only appropriate for the Court to consider the common law meaning of a term when Congress has not indicated how it should be interpreted.

Moreover, to the extent that the Supreme Court's jurisprudence provides guidance as to how the phrase should be interpreted, *McCarthy v. Bronson*, 500 U.S. 136, 111 S.Ct. 1737, 114 L.Ed.2d 194 (1991), suggests a broader reading of the term. In that case, the Supreme Court held that the term "conditions of confinement" included petitions challenging the use of excessive force. *See id.* at 142–43, 111 S.Ct. 1737. The *McCarthy* court was construing 28 U.S.C. § 636(b)(1)(B), which authorizes a U.S. District Judge to refer prisoner petitions challenging conditions of confinement to a magistrate judge. The Supreme Court specifically found that the broader reading of the term "comports with the policy behind the [Federal Magistrates] Act," which was to "authorize greater use of magistrates to assist federal judges 'in handling an ever-increasing caseload.'" *Id.* at 142, 111 S.Ct. 1737 (*quoting* S.Rep. No. 94–625).

Accordingly, if this Court were to rely on legislative history as a guide for determining which reading of the phrase was intended, Supreme Court precedent is consistent with a broader reading. To the extent that the legislative history is helpful or instructive in this instance, it indicates that the purposes behind the PLRA were to reduce what were perceived as frivolous prisoner petitions as well as the caseload of the federal courts. *See, e.g.,* 141 Cong. Rec. S7498–01, S7526 (1995) (statement of Senator Kyl that overall purpose of PLRA is to deter and reduce the numbers of "frivolous inmate lawsuits ... clogging the courts and draining precious judicial resources"). Based on this view of legislative history, both the Federal Magistrates Act and the PLRA are intended to manage and reduce the burden of prisoner litigation on the federal courts. Accordingly, the term "prison conditions" in the PLRA should be read, like the analogous term in the Federal Magistrates Act, to include claims of excessive force.

Thus, plaintiff must exhaust the available administrative avenues of redress before he may commence litigation alleging the use of excessive force.

### III. Exhaustion of Administrative Remedies

Because Diezcabeza must exhaust his available administrative remedies before he is entitled to bring this action, the question is whether he has done so.[3]

■■■■■ Plaintiff's allegations must be accepted as true for the purposes of analyzing a motion for judgment on the pleadings, and this Court must draw all reasonable inferences in plaintiff's favor. *See Sheppard v. Beerman*, 18 F.3d 147, 150 (2d Cir.) *cert. denied* 513 U.S. 816, 115 S.Ct. 73, 130 L.Ed.2d 28 (1994). The motion may only be granted, and the complaint dismissed, if "'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Burnette v. Carothers*, 192 F.3d 52, 55–56 (2d Cir.1999) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).

Officer Lynch contends that plaintiff failed to exhaust the available remedies.

---

**3.** New York state has implemented grievance procedures in each of its correctional facilities. *See* N.Y. Correction Law § 139 (McKinney Supp.1998); 7 N.Y. C.R.R. § 701. Specifically, prisoners are permitted to file grievances regarding "[a]llegations of employee misconduct meant to annoy, intimidate or harm an inmate." *See* 7 N.Y. C.R.R. § 701.2(e).

In support of that contention, defendant submitted an affidavit from Thomas G. Eagen, Director of the New York Department of Correctional Services' Inmate Grievance Program, and one from John R. VanTassel, Sergeant at Fishkill Correctional Facility. Both affidavits state that there is no record that Diezcabeza ever submitted a grievance regarding the incident described in the amended complaint. However, on the face of his amended complaint plaintiff indicated that he did "present the facts relating to [his] complaint in the state prisoner grievance procedure." *See* Amended Complaint, page 2.

 The Court may, at its discretion, consider the affidavits attached to the motion and thereby treat the instant motion as one for summary judgment. *See* Fed. R.Civ.P. 12(c). However in order to do so, all parties must be given a "reasonable opportunity to present all material made pertinent to such a motion by Rule 56." Fed.R.Civ.P. 12(c).

Because this Court finds that plaintiff was required to have exhausted his remedies before he may proceed in this action, plaintiff is hereby put on notice that he must present to the court affidavits or other evidence indicating that he did indeed exhaust his administrative remedies. Plaintiff must understand that in order to avoid a final judgment against him he must submit evidence in support of his claim that he did in fact exhaust his remedies.

### IV. Conclusion

This Court finds that the Prison Litigation Reform Act of 1996 requires plaintiff to have exhausted his administrative remedies prior to commencing this litigation claiming a violation of his right to be free from cruel and unusual punishment pursuant to the Eighth Amendment to the United States Constitution. Accordingly, defendant's motion is granted without prejudice to plaintiff submitting additional evidence, within thirty days, that he did in fact exhaust the available administrative remedies. Plaintiff is hereby advised that should he fail to present evidence that he exhausted the available remedies, this action will be dismissed without prejudice to his renewing his claims after he exhausts his administrative remedies.