David Davila **MARRERO**, Plaintiff,

v.

Kenneth S. **APFEL**, Commissioner of Social Security, Defendant.

No. 94 CIV. 2602(SHS).

United States District Court, S.D. New York.

March 16, 2000.

---

David Davila Marrero, New York City, pro se.

Lorraine S. Novinski, Mary Jo White, U.S. Atty, New York City, for Kenneth S. Apfel.

## OPINION & ORDER

STEIN, District Judge.

Plaintiff David Davila Marrero brings this *pro se* action pursuant to Section 205(g) of the Social Security Act ("the Act"), 42 U.S.C. § 405(g), to challenge a final determination by defendant Kenneth S. Apfel, Commissioner of Social Security, denying him Supplemental Security Income ("SSI") benefits. The Commissioner has moved for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c). Because, as set forth below, substantial evidence supports the Commissioner's determination, defendant's motion is granted.

## BACKGROUND

### I. Procedural history

On October 7, 1991, Marrero filed an application for SSI benefits pursuant to Title XVI of the Act, asserting that he suffered from a "nervous condition" preventing him from working and therefore entitling him to benefits. R. 59–71.[1] On March 31, 1992, this application was initially denied, but Marrero requested reconsideration. R. 94–126. On November 3, 1992, a hearing was held before administrative law judge ("ALJ") Joseph K. Rowe, at which Marrero appeared and testified through a Spanish interpreter. R. 29–41, 284–98. On December 21, 1992, the ALJ issued a decision finding Marrero was not disabled and denying his claim for SSI benefits. R. 172–74. Marrero then requested administrative review of the ALJ's decision. R. 179. On March 31, 1993, the Appeals Council of the Social Security Administration vacated the decision and remanded for a new hearing with instructions to obtain additional medical records pertaining to treatment Marrero had received while living in Puerto Rico. R. 186–87. On remand, attempts to obtain the additional records proved unsuccessful. R. 189–209. On September 1, 1993, a second hearing was held before ALJ Rowe at which Marrero again testified through an interpreter. R. 42–58, 299–315. On September 24, 1993, the ALJ issued a second decision again finding Marrero was not disabled and denying his claim for SSI benefits. R. 10–16, 320–26. The Appeals Council denied Marrero's subsequent request for review. R. 3–4, 316–17.

On April 12, 1994, Marrero filed this *pro se* action pursuant to 42 U.S.C. § 405(g) in the Southern District of New York, contending that the determination below was not supported by substantial evidence. On March 26, 1996, pursuant to a stipulation between the parties, this Court remanded the case to the Commissioner for consideration of additional medical records from Puerto Rico. R. 333–34. On January 31, 1997, the Appeals Council remanded the case for a new hearing with instructions to update the medical evidence. R. 335–36. After the additional records were obtained, ALJ Mark S. Sochaczewsky held a third hearing on September 10, 1997, at which

1. References to "R." are to pages of the record of proceedings in the Social Security Administration.

Marrero again testified through an interpreter, and at which a medical expert and a vocational expert also testified. R. 261–80. On December 8, 1997, the ALJ issued a third decision finding Marrero had not been disabled at any time since October 7, 1991. R. 242–49. The ALJ's decision became the final decision of the Commissioner by virtue of an order of the Appeals Council dated April 24, 1998. R. 231.

On March 26, 1999, this Court granted Marrero's motion for an order pursuant to Fed.R.Civ.P. 60 giving him permission to reopen the *pro se* action he had originally filed in 1994. On May 14, 1999, the Commissioner moved for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c). On July 7, 1999, this Court issued an order notifying Marrero of the nature and consequences of the Commissioner's motion, in accordance with *McPherson v. Coombe,* 174 F.3d 276, 282 (2d Cir.1999). On August 31, 1999, Marrero submitted a letter to the Court, which shall be construed liberally and shall be deemed to be his response to defendant's motion. *See Diezcabeza v. Lynch,* 75 F.Supp.2d 250, 252 (S.D.N.Y.1999).

## II. Factual history

### A. Marrero's testimony

According to testimony given by Marrero at the hearings, he was born in Puerto Rico on June 11, 1945, and moved to the continental United States in 1988. R. 46, 303. He was educated through the seventh grade in Puerto Rico, reads and speaks Spanish, and can communicate a little in English. R. 47, 266, 304. Marrero's only work experience consisted of employment as a jeweler and a fruit packer in Puerto Rico between 1972 and 1974. R. 34, 291. From 1974 to 1988, he lived with and was supported by his father. R. 293–94. After moving to the United States, he spent three years living on the streets. R. 37, 294. Since 1992, Marrero has lived with his wife in an apartment in New York City. R. 47, 212, 265, 304.

Marrero contends that he is unable to work because of a nervous condition that renders him unable to walk or to talk, affects his memory and ability to concentrate, and causes him to suffer insomnia. R. 267–69. He does not presently receive treatment or medication for this condition, and he has not received regular medical treatment since approximately 1987. R. 267. Marrero has admitted that he has no physical limitations that affect his ability to work, and that he has no trouble sitting, standing, walking, bending, lifting, pushing, or pulling. R. 40, 267–68, 297. He has also testified that he is able to help with cooking, cleaning, shopping, and housework and that he is able to travel about the city by himself using public transportation. R. 265, 267.

### B. The medical evidence

Medical documentation added to the record after this Court's remand indicates that Marrero was admitted to a psychiatric hospital in Puerto Rico on an involuntary basis several times between 1982 and 1987. R. 422, 446, 721, 727, 874, 889, 942. He was diagnosed as suffering from paranoid schizophrenia and he escaped from the hospital on numerous occasions. R. 422, 446, 721, 860, 923, 933. These records also reflect that Marrero suffered from problems with drug and alcohol abuse. R. 731, 803, 862.

On November 26, 1991, Marrero underwent a comprehensive physical examination by Dr. Edmond B. Balinberg. R. 158–60. Dr. Balinberg concluded that Marrero's capacity to perform work-related activities "was within normal limits," except for a mildly enlarged liver and the presence of boils. R. 160. Dr. Balinberg further noted that "[h]is main problem is a psychiatric problem" and that Marrero should be referred for psychiatric evaluation. R. 160.

On December 1, 1991, Marrero was examined by a consulting psychiatrist, Dr. Carlo Filiaci. R. 162–63. Dr. Filiaci found that Marrero could "express himself in a logical and coherent manner," that he could read and write in Spanish and to

some extent in English; that there was "no psychomotor retardation" or "deterioration in personal habits"; and that he could follow simple instructions but had limited ability to concentrate. R. 163. Dr. Filiaci also found that Marrero was "slightly depressed and anxious"; that his affect was "appropriate, but constricted to this anxious, rather shallow mood"; that his memory was "grossly intact"; and that he was "fully oriented" as to times, places and persons; but that he refused to cooperate on simple tasks. R. 163. Dr. Filiaci concluded:

> Patient is able to understand and carry out simple instructions, but would be unable to respond appropriately to supervision, cooperate with co-workers and withstand work pressure in a work setting because of severe inability to concentrate and anxiety, but it is difficulty [sic] to say whether patient is somehow malingering.

R. 163. Finally, Dr. Filiaci diagnosed Marrero as suffering from "major depression . . . with possible malingering" and a "borderline character." R. 163.

Other medical documentation indicates Marrero was treated for abscesses between January and June 1991 at Lincoln Medical and Mental Health Center in the Bronx ("Lincoln Hospital"). R. 147–57. On September 26, 1993, he was treated for a rash and knee inflammation at Lincoln Hospital. R. 215–28. On three occasions between December 27, 1993 and March 3, 1994, he returned to Lincoln Hospital to seek help in obtaining medical records from Puerto Rico. R. 338–40. On the latter three occasions, the physicians with whom Marrero spoke noted that he demonstrated paranoid ideas; that schizophrenia should be ruled out; that he was alert and oriented with intact thought processes; and that his mental condition was becoming more stable. R. 338–40.

At the hearing on September 10, 1997, Dr. Edward Halperin, a psychiatrist, testified after having reviewed Marrero's medical records. R. 270–74. Dr. Halperin diagnosed Marrero's condition as residual paranoid schizophrenia, meaning that Marrero had suffered a schizophrenic episode at one point but the illness had since gone into permanent or semi-permanent remission. R. 273; Def.'s Mem. Supp. Motion to Dismiss, at 7 n. 3. Dr. Halperin suggested that certain of the symptoms previously interpreted as schizophrenia may have been caused by Marrero's substance abuse, but that his records indicated no such abuse in recent years. R. 273. Dr. Halperin opined that Marrero did not meet the criteria of any impairment listed in the federal regulations; that he would be able to cooperate with simple instructions, but that he would have difficulty performing complex tasks or following complex instructions. R. 273–74. Dr. Halperin stated that he was unable to comment on Filiaci's suggestion that Marrero was malingering. R. 274.

On August 19, 1997, Marrero underwent a nonverbal intelligence evaluation by Dr. Rochelle Sherman. R. 968–70. Dr. Sherman noted Marrero's "less than poor motivation and malingering" but also commented on his adequate social and communication skills, attention, memory, and judgment, as well as on his lack of "paranoia, major clinical depression or other psychopathology." R. 968–69. Dr. Sherman further found that he was "independent in all self-care activities," and that his IQ rating below 40 did not represent his intellectual abilities, particularly in light of his random and inconsistent responses to testing. R. 969. Dr. Sherman concluded that "Marrero appears able to attend to, comprehend, remember and carry out basic ·instructions" but that he "may display an oppositional attitude which may interfere with work performance." R. 969. Dr. Sherman diagnosed Marrero as suffering from alcohol dependence in remission and ruled out any malingering or antisocial personality disorder. R. 970.

On August 20, 1997, Marrero was interviewed by a consulting psychiatrist, Dr. Alain DelaChapelle. R. 971–72. Dr. Dela-

Chapelle commented that Marrero was alert and cooperative, engaged in coherent and relevant speech, had no thinking disorder, did not suffer from paranoia or delusions, and showed intellectual functioning "in the average range" in his responses to various tests. R. 971–72. At the same time, he remarked that Marrero established poor eye contact, and that the examination was "marked by an apparent evasiveness and vagueness regarding factual details of his background history." R. 971. Dr. DelaChapelle also noted that Marrero "can take care of his needs, do household chores, and use public transportation." R. 972. Dr. DelaChapelle concluded:

> In my opinion, patient has a satisfactory ability to understand, remember and carry out instructions, and a satisfactory ability to respond appropriately to supervision, co-workers, and work pressures in a work setting.

R. 972. Finally, Dr. DelaChapelle diagnosed Marrero as suffering from anxiety disorder and from alcohol dependence in remission. R. 972.

The next month, Dr. Halperin reported that his original opinion had not changed after reviewing the reports from Dr. Sherman and Dr. DelaChapelle. R. 973. He found that Dr. DelaChapelle accurately described Marrero and concurred in his diagnoses. R. 973. He highlighted Dr. Sherman's suggestion that Marrero had been malingering as well as the conclusion that Marrero's IQ rating was unreliable. R. 973. Dr. Halperin also noted that Marrero "is not retarded." R. 973.

### C. The vocational evidence

At the hearing on September 10, 1997, vocational expert William L. Mooney testified after having reviewed the record in Marrero's case. R. 276–79. The ALJ asked Mooney whether any jobs exist in the national or regional economy that would be suitable for a person of Marrero's age, education, and vocational background, who possesses a full range of capacities but who cannot perform complex tasks or follow complex instructions. R. 277. In response, Mooney testified that jobs suitable for such a person would include the simple tending of automatic machinery, for which about 80,000 positions exist in the New York region and twelve million nationally; porter-type employment, for which about 10,000 positions exist in the New York region and one million nationally; and tray line employment, for which about 2,000 to 3,000 positions exist in the New York region and 300,000 nationally. R. 277–78.

### DISCUSSION

#### I. Standard of review

In reviewing a denial of benefits, a court may reverse the Commissioner's finding only if that finding "is based upon legal error or is not supported by substantial evidence." *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir.1999); *see* 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). Substantial evidence is " 'more than a mere scintilla. It means such evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Richardson*, 402 U.S. at 401, 91 S.Ct. at 1427 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938)); *see Rosa*, 168 F.3d at 77. "The substantial evidence test applies not only to findings of basic evidentiary facts but also to inferences and conclusions drawn from such facts." *Tillery v. Callahan*, No. 97 Civ. 0438, 1997 WL 767561, at *2 (S.D.N.Y. Dec.11, 1997) (citation omitted). Moreover, a court " 'may not substitute its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review.' " *Jones v. Sullivan*, 949 F.2d 57, 59 (2d Cir.1991) (quoting *Valente v. Secretary of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir.1984)). *See generally Kocaj v. Apfel*, No. 97 Civ. 5049, 1999 WL 461776, at *3 (S.D.N.Y. July 6, 1999).

#### II. Disability under the Act

In order to establish disability under the Act, a plaintiff has the burden of

demonstrating (1) that she was unable to engage in substantial gainful activity by reason of a physical or mental impairment that could have been expected to result in death or that had lasted or could have been expected to last for a continuous period of at least twelve months, and (2) that the existence of such an impairment was demonstrated by evidence supported by data obtained by medically acceptable clinical and laboratory techniques. *See* 42 U.S.C. § 423(d)(1)(A), (d)(3); *Rosa,* 168 F.3d at 77. Establishing the mere presence of a disease or impairment is not sufficient for a finding of disability under the Act; the disease or impairment must result in severe functional limitations that prevent the claimant from engaging in any substantial gainful activity. *See* 42 U.S.C. § 423(d)(2)(A); *Rosa,* 168 F.3d at 77.

The Commissioner has established a five-step sequential evaluation for adjudication of disability claims, 20 C.F.R. §§ 404.1520 and 416.920, which the Second Circuit has articulated as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience.... Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

*Rosa,* 168 F.3d at 77 (quoting *Berry v. Schweiker,* 675 F.2d 464, 467 (2d Cir. 1982)).

█] If the claimant fulfills her burden of proving the first four steps, the burden then shifts to the Commissioner to determine the fifth step—whether there is alternative substantial gainful work in the national economy that the claimant can perform. *See id.* In making this determination the Commissioner must consider: (1) the objective medical facts; (2) the medical opinions of the examining or treating physicians; (3) the subjective evidence of the claimant's symptoms submitted by the claimant, his family, and others; and (4) the claimant's educational background, age, and work experience. *See Brown v. Apfel,* 174 F.3d 59, 62 (2d Cir.1999) (per curiam). *See generally Kocaj,* 1999 WL 461776, at *4.

## III. Substantial evidence supports the Commissioner's determination

██ In his decision dated December 8, 1997, ALJ Sochaczewsky determined that the objective medical evidence failed to establish that Marrero suffered from a disability at any time on or after October 7, 1991, the date he submitted his application for SSI benefits. R. 248. In reaching this determination, the ALJ specifically found that "[t]he claimant's subjective allegations are not supported by the evidence of record." R. 248. Marrero now contends that this determination was incorrect and inconsistent with his testimony. In particular, he asserts that to the extent the ALJ relied on reports of malingering in order to discredit his testimony, that reliance was improper, since any evasive behavior exhibited during his examinations simply reflected his fears of being forced to take medications or to stay in a psychiatric hospital.

██ Marrero's argument fails for two reasons. First, the U.S. Court of Appeals for the Second Circuit has emphasized that the ALJ " 'is free to resolve issues of credibility as to lay testimony or to choose

between properly submitted medical opinions.' " *Balsamo v. Chater,* 142 F.3d 75, 81 (2d Cir.1998) (quoting *McBrayer v. Secretary of Health & Human Servs.,* 712 F.2d 795, 799 (2d Cir.1983)); *accord Irizarry v. Callahan,* No. 97 Civ. 6093, 1998 WL 556157, at *7 (S.D.N.Y. Aug.31, 1998). Although an ALJ " 'cannot arbitrarily substitute his own judgment for competent medical opinion' " or fail to "cite any medical opinion to dispute the treating physicians' conclusions," *Balsamo,* 142 F.3d at 81 (quoting *McBrayer,* 712 F.2d at 799), neither of those mistakes was made in reaching the determination below. Here, Dr. Filiaci, Dr. Sherman, and Dr. Halperin each noted the possibility of malingering, R. 163, 968–69, 973, and Dr. DelaChapelle similarly noticed Marrero's "apparent evasiveness and vagueness," R. 971. Indeed, the ALJ explicitly cited these findings in reaching his decision. R. 244–45. While Dr. Sherman ultimately ruled out malingering as a possible diagnosis, R. 970, and while Dr. Halperin noted the difficulties of detecting malingering, R. 274, the ALJ was well within his ken to choose among these varying opinions, to find that Marrero was malingering based on the substantial evidence before him, and to discredit any contrary testimony from Marrero.

Second, although a claimant's subjective allegations are relevant in considering the extent to which an impairment causes pain or affects daily activities, such statements alone cannot establish the existence of a disability. *See* 20 C.F.R. § 404.1529(a); *Kocaj,* 1999 WL 461776, at *4. Rather, to demonstrate a disability, there must be medical evidence showing that the claimant has a medical impairment that could reasonably be expected to produce the pain or other symptoms alleged. *See* 42 U.S.C. § 423(d)(5)(A).

Here, substantial evidence supported the ALJ's determination that Marrero failed to present sufficient medical evidence to corroborate his account of the disabling nature of his afflictions. While the record does reflect Marrero's repeated hospitalizations for paranoid schizophrenia

between 1982 and 1987, R. 422, 446, 721, 727, 874, 889, 942, Dr. Halperin diagnosed Marrero's present condition as residual paranoid schizophrenia, meaning that the illness had gone into permanent or semi-permanent remission, and he also suggested that Marrero's earlier symptoms may have resulted from his prior substance abuse, R. 273. In addition, Dr. Halperin, Dr. Sherman, and Dr. DelaChapelle each made specific findings that Marrero possessed sufficient physical and intellectual competence to carry out simple tasks and to follow simple instructions. R. 273–74, 969–70, 972. Indeed, as the ALJ noted, R. 246, Marrero himself testified that he can perform basic physical exercises, undertake household chores, and use public transportation, R. 40, 265, 267–68, 297. *See Tillery,* 1997 WL 767561, at *5.

Although Dr. Filiaci found that Marrero would not be able to function in a work setting, he explicitly qualified this finding, stating that "it is difficult[ ] to say whether patient is somehow malingering." R. 163. Moreover, Dr. Filiaci was not Marrero's "treating physician," and as such his opinion was not owed the special deference given to such physicians. *See Schaal v. Apfel,* 134 F.3d 496, 503–05 (2d Cir.1998). Therefore, in light of the substantial evidence of malingering, as well as the contrary testimony from the other examining doctors and from Marrero himself, the ALJ was entitled to discount Dr. Filiaci's opinion and to conclude that, throughout the period in question, Marrero had retained sufficient residual functioning capacity to perform simple tasks and to follow simple instructions. Finally, substantial evidence consisting of William Mooney's testimony also supported the ALJ's determination that despite Marrero's impairments, there do exist positions in the national and regional economy for jobs well suited to his functioning capacity. R. 277–78. *See Rosa,* 168 F.3d at 78 & n. 2.

## IV. Religious exercise claim

■] Marrero further asserts that he is entitled to benefits on the ground that his "religious faith (which stems from the teachings of the Bible) prevents him from working a regular job," since "the Bible teaches one to live one's life by faith in Jesus Christ ... for all things spiritual and material." Even assuming that Marrero's claim is not barred by his failure to raise it before the ALJ or the Appeals Council, his argument still fails on its merits.

Construing Marrero's claim liberally as one pursuant to the Religious Freedom Restoration Act, "[t]he threshold issue under the Act is whether religious practices have been substantially burdened." *Bronx Household of Faith v. Community Sch. Dist. No. 10,* 127 F.3d 207, 217 (2d Cir. 1997) (citing 42 U.S.C. § 2000bb–1(a)); *see also Browne v. United States,* 176 F.3d 25, 26 (2d Cir.1999) (RFRA continues to apply to claims against the federal government). "A 'substantial burden' under the Act is a governmental policy prohibiting religious adherents from engaging in conduct that is mandated by their faith." *Bronx Household of Faith,* 127 F.3d at 217 (citation omitted). In the present case, however, the Commissioner has not prohibited Marrero from avoiding work but rather has refused to subsidize his decision to remain unemployed on the neutral ground that he does not suffer from an impairment entitling him to benefits pursuant to the Social Security Act. *See id.*

The same result follows if Marrero's claim is construed as one pursuant to the First Amendment. *See Employment Div. v. Smith,* 494 U.S. 872, 883, 110 S.Ct. 1595, 1602, 108 L.Ed.2d 876 (1990) (citing *Thomas v. Review Bd. of Indiana Employment Sec. Div.,* 450 U.S. 707, 101 S.Ct. 1425, 67 L.Ed.2d 624 (1981)). In particular, this case simply does not present the situation where the government has compelled a person to choose between religious exercise on the one hand and participation in an otherwise available entitlements program on the other, *see Thomas,* 450 U.S. at 716, 101 S.Ct. at 1431, since the Social Security program would be equally unavailable to Marrero whether or not he exercised his asserted religious rights by avoiding employment. *See United States v. Amer,* 110 F.3d 873, 879 n. 1 (2d Cir. 1997) (quoting *Thomas,* 450 U.S. at 718, 101 S.Ct. at 1432).

## *CONCLUSION*

For the reasons set forth above, the Commissioner's motion for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c) is hereby granted. The Clerk of Court is directed to enter judgment accordingly.

SO ORDERED.