Rodolfo **FRIAS**, Plaintiff,

v.

**COMMISSIONER OF SOCIAL SECURITY**, Defendant.

15–cv–5020 (SJF)

United States District Court, E.D. New York.

Signed December 13, 2016

Rodolfo Frias, Amityville, NY, pro se.

James R. Cho, Karen T. Callahan, United States Attorney's Office, Brooklyn, NY, Social Security Administration–Generic, Social Security Administration, for Defendant.

## OPINION AND ORDER

FEUERSTEIN, District Judge:

*Pro se* Plaintiff Rodolfo Frias ("Plaintiff" or "Frias") commenced this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of the final determination of Defendant Commissioner of Social Security ("Defendant" or "Commissioner") denying Plaintiff's Au-

gust 9, 2012 application for Supplemental Security Income ("SSI") benefits. *See* Docket Entry ("DE") [1]. Presently before the Court is Defendant's unopposed motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). DE [13]. For the reasons set forth herein, the Commissioner's motion is granted in its entirety.

# I. BACKGROUND

Unless otherwise noted, the following facts are drawn from Plaintiff's Complaint ("Compl."), DE [1], and the Transcript of the Administrative Record ("Tr."), DE [15].

## A. Procedural Background

On August 9, 2012, Plaintiff filed an application for SSI benefits, claiming disability as a result of injuries to his back, knee, and elbow following a November 1, 2011 motor vehicle accident.[1] Tr. 7, 95–100. On January 10, 2013, the Social Security Administration ("SSA") denied Plaintiff's application, finding that he was not disabled under the SSA's rules. *Id.* at 50–55. On January 31, 2013, Plaintiff requested a hearing before an Administrative Law Judge. *Id.* at 56–58. On November 26, 2013, a hearing was held before Administrative Law Judge Andrew Weiss (the "ALJ"), at which Plaintiff appeared with counsel. *Id.* at 1–16. In a January 30, 2014 Notice of Decision (the "ALJ Decision"), the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act (the "Act"), 42 U.S.C. § 1381 *et seq.*, and was therefore not entitled to SSI benefits. *Id.* at 27–38. On March 21, 2014, Plaintiff requested that the Appeals

Council ("AC") review the ALJ Decision. *Id.* at 26. In a June 15, 2015 Notice of Appeals Counsel Action, the AC wrote that it "found no reason under [its] rules to review the Administrative Law Judge's decision," and that "the Administrative Law Judge's decision is the final decision of the Commissioner . . . ." *Id.* at 17–19. By way of a Complaint dated August 20, 2015, Plaintiff commenced this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the Commissioner's final determination. DE [1]. On May 5, 2016, Defendant filed the instant motion for judgment on the pleadings pursuant to Rule 12(c).[2] DE [13].

## B. Non–Medical Evidence

### 1. Plaintiff's Personal and Employment History

Plaintiff was born on May 27, 1979, and was thirty-four (34) years old at the time of the administrative hearing. Tr. 4. Frias graduated from Island Drafting & Technical Institute in 2010. *Id.* at 4, 8. Prior to his accident, Plaintiff worked as: (i) an electronic technician at Radio Shack from approximately 1998 until 2000; (ii) a museum attendant at the Newark Museum from approximately 2005 until 2006; and (iii) an electronic technician at Solectron from approximately 2008 until 2011. *Id.* at 13, 106. Following his accident, Frias worked in fundraising at a campaign center from approximately February 2013 until September 2013. *Id.* at 5–6.

### 2. Plaintiff's Self–Reporting in His Supplemental Security Income Application

In support of his application for SSI benefits, Plaintiff submitted a Function

---

1. At a November 26, 2013 administrative hearing, Plaintiff stated that he was seeking a closed period of disability from November 1, 2011 through February 1, 2013. Tr. 5–6.

2. When Defendant served the instant motion on Plaintiff on February 16, 2016, Defendant provided the required notice pursuant to Local Civil Rules 12.1 and 56.2 advising Plaintiff of his rights. DE [14–1].

Report and Work History Report. *Id.* at 116–33.

### i. Function Report

In Plaintiff's December 12, 2012 Function Report, Plaintiff reported that he lived at home with his family, that he did not take care of anyone else, and that his mother assisted him with feeding his pets. *Id.* at 116–17. Frias had no trouble with personal care, and was able to shave, feed himself, and use the toilet without assistance. *Id.* at 117–18. Plaintiff was able to shop for food on a weekly basis, and he and his mother prepared his meals. *Id.* at 118–20. Plaintiff was capable of doing "some cleaning." *Id.*

Plaintiff went outside on a daily basis, and either walked or used public transportation to travel. *Id.* at 119. Although Plaintiff had a driver's license, he did not drive because he did not have a car. *Id.* at 119–20. Plaintiff's hobbies and interests included cars and watching baseball, which he did weekly, and his social activities included talking on the telephone, which he did daily. *Id.* at 120–21. Plaintiff had no problems getting along with family, friends, and neighbors, and his social activities did not change following his injury. *Id.* at 121.

Following his injury, Plaintiff was unable to "lift much," had to "sit down at times," and had to "take a break" when walking. *Id.* Plaintiff also reported that he had trouble climbing stairs, kneeling, and squatting. *Id.* at 122. Plaintiff was able to walk a "few blocks" before resting, and was able to continue after two (2) minutes. *Id.* at 123. Although Plaintiff had problems paying attention and remembering things, he was able to follow written and spoken instructions. *Id.* Plaintiff also reported difficulty sleeping at night. *Id.* at 124.

Plaintiff first experienced pain on the date of the accident. *Id.* Although Frias was not receiving medical treatment at the time of the Function Report, he had previously treated with pain management specialist Dr. Anil Patel. *Id.* Plaintiff described his pain as "dull stabbing" in his knee and back. *Id.* Plaintiff experienced the pain weekly, and it was exacerbated by walking and climbing. *Id.* at 125. Plaintiff reported that he was not taking pain medication, but that he had previously taken Oxycodone since 2012. *Id.* Plaintiff did not do anything else to relieve his pain. *Id.* at 126.

### ii. Work History Report

In Plaintiff's Work History Report, Plaintiff provided information regarding his employment, and the nature of work he performed, for the fifteen (15) years prior to his injury. *Id.* at 128–33. From 1997 until 1998,[3] Plaintiff sold electronics and provided customer service at Radio Shack. *Id.* at 133. Plaintiff used technical knowledge or skills, and was required to write and complete reports. *Id.* Plaintiff walked for five (5) hours per day, stood for two (2) hours per day, and sat for one (1) hour per day. *Id.* The heaviest weight that he lifted was less than ten (10) pounds. *Id.*

From 1998 until 1999, Plaintiff was an IDT prepaid card customer service representative. *Id.* at 132. Plaintiff used technical knowledge or skills, and was required to write and complete reports. *Id.* Plaintiff walked for one (1) hour per day, and sat for seven (7) hours per day. *Id.* The heaviest weight that he lifted was less than ten (10) pounds. *Id.*

From 2003 until 2004, Plaintiff worked as a gallery attendant at the Newark Museum, where he was responsible for watch-

---

**3.** Plaintiff did not provide exact dates of employment for any of the positions identified in the Work History Report.

ing the galleries. *Id.* at 130. Plaintiff walked or stood for seven (7) hours per day, and sat for one (1) hour per day. *Id.* The heaviest weight that he lifted was less than ten (10) pounds. *Id.*

In 2008, Plaintiff repaired cell phones and provided customer service at Solectron. *Id.* at 131. Plaintiff used machines, tools, and equipment, and his job required the use of technical knowledge or skills. *Id.* Plaintiff walked for five (5) hours per day, stood for six (6) hours per day, and sat for two (2) hours per day. *Id.* The heaviest weight that Plaintiff lifted was less than ten (10) pounds. *Id.*

In 2010, Plaintiff worked at Neotech Farmingdale, where he repaired electronics using technical knowledge and skills. *Id.* at 129. Plaintiff walked for four (4) hours per day and sat for four (4) hours per day. *Id.* The heaviest weight that he lifted was less than ten (10) pounds. *Id.*

### 3. Plaintiff's Hearing Testimony

At the November 26, 2013 hearing before the ALJ, Plaintiff testified that he was thirty-four (34) years old, and that he lived at home with his mother; that he was unemployed at the time of the hearing, and had not worked since September 2013; that he had injured his knee, elbows, shoulder, and head in the November 1, 2011 accident; and that he treated at the hospital following the accident, but did not stay overnight. *Id.* at 4–7. Frias waited approximately one (1) or two (2) weeks to seek further medical treatment because he "thought it would go away." *Id.* at 7. When asked why he was unable to work prior to February 2013, Plaintiff testified that he "was doing a lot of treatment" and that the pain in his back, shoulder, elbow, and knee was "[p]reventing [him] from … doing certain things." *Id.* at 9–11. According to Frias, he "had a problem with [his] elbow," and it "was numb" and "just would bother [him]." *Id.* at 8. Plaintiff further testified

that he "had a problem with [his] hand," but was able to drive if he had to. *Id.* at 9. Frias testified that he was occasionally restricted to his bed due to pain. *Id.*

### 4. Vocational Expert Testimony

At the November 26, 2013 hearing, vocational expert Christina Boardman testified regarding Plaintiff's past employment experience. *Id.* at 12–15. Boardman testified that Plaintiff had previously held four (4) positions: (i) museum attendant, which required light strength, and for which an estimated thirty-one thousand, two hundred and seventy (31,270) jobs exist in the work force; (ii) technician, which required medium strength, and for which an estimated four hundred and fifty thousand and ten (450,010) jobs exist in the work force; (iii) telephone repairer, which required medium strength, and for which an estimated two hundred and eight thousand, two hundred and twenty (208,220) jobs exist in the work force; and (iv) salesclerk, which required light strength, and for which an estimated four million, three hundred and forty thousand (4,340,000) jobs exist in the work force. *Id.* at 13–14. Boardman testified that, assuming Plaintiff could perform a full range of work requiring medium strength, he could perform any of his prior jobs. *Id.* at 15.

### C. Medical Evidence

#### 1. Good Samaritan Hospital Medical Center

Following his accident, Plaintiff first treated at Good Samaritan Hospital Medical Center on November 10, 2011. *Id.* at 171. Plaintiff received a CT scan of his brain in response to "head trauma," which revealed "[p]eritorcular CSF attenuation," but was otherwise "unremarkable." *Id.* On December 9, 2011, Plaintiff underwent x-rays of: (i) his left shoulder, which was "unremarkable"; and (ii) both knees,

which revealed "no evidence of fracture, dislocation or destructive bone lesion." *Id.* at 172–73.

### 2. BAB Radiology

On December 14, 2011, Plaintiff had MRIs of his lumbar and cervical spine at BAB Radiology. *Id.* at 146–47. The MRI of Plaintiff's lumbar spine revealed no abnormalities, and the MRI of Plaintiff's cervical spine revealed straightening of the normal lordosis, but was a "[g]rossly normal study." *Id.* A January 4, 2012 MRI of Plaintiff's cervical spine was "normal" and revealed "[n]o evidence of focal disc herniation or significant stenosis." *Id.* at 142. A January 6, 2012 MRI of Plaintiff's lumbar spine revealed "disc degeneration at L5–S1 with retrolisthesis" and "L5–S1 disc bulging and associated left paracentral sub articular disc extrusion . . . ." *Id.* at 143.

On December 28, 2011, Plaintiff had MRIs of both knees at BAB Radiology. *Id.* at 144–45. The MRI of Plaintiff's right knee revealed: "(1) intrasubstance meniscal signal predominant in the medial meniscus, (2) intact ligaments and tendons, and (3) no acute marrow signal changes." *Id.* at 144. The MRI of Plaintiff's left knee revealed: "(1) mild intrasubstance meniscal signal predominant in the medial meniscus without surface extension tear, (2) intact ligaments and tendons, and (3) no acute marrow signal changes." *Id.* at 145. A February 21, 2012 MRI of Plaintiff's left shoulder was "[u]nremarkable." *Id.* at 141.

### 3. Dr. Anil Patel

From January 25, 2012 until May 22, 2012, Plaintiff treated with pain management specialist Dr. Anil Patel with complaints of moderate to severe pain in his lower back, shoulder, neck, and left leg. *Id.* at 282–311. During the course of his treatment with Dr. Patel, Plaintiff had moderate tenderness and reduced range of motion in his cervical and lumbar spine, and received five (5) lumbar epidural steroid injections. *Id.* Dr. Patel's diagnoses included lumbar and cervical disc displacement, lumbago, lumbosacral neuritis, and cervicalgia. *Id.*

### 4. Dr. Brian Wolin

On February 7, 2012, Dr. Brian Wolin conducted an independent chiropractic examination of Plaintiff. *Id.* at 271. Plaintiff complained of headaches, radiating neck and lower back pain, and pain in his left shoulder, left wrist, and both knees. *Id.* at 272. Plaintiff stated that he did not perform heavy lifting or kneeling, and that his daily activities included ten (10) minutes of walking, four (4) hours of sitting, and two (2) hours of standing per day. *Id.* Although Plaintiff was able to perform household chores, he was unable to perform his personal hygiene routine. *Id.* Plaintiff walked well on his tiptoes and heels, and did not walk with an antalgic gait or limp. *Id.* at 273. Although Plaintiff complained of tenderness to palpitation of the cervical and lumbar spine, both displayed normal flexion, extension, rotation, and lateral bending. *Id.* There was no tenderness or spasm in the thoracic spine. *Id.*

Dr. Wolin's impressions were "resolved sprain/strain of the cervical and lumbar spine" and "normal exam of the thoracic spine." *Id.* at 274. Dr. Wolin concluded that there was "no evidence of a disability at [that] time" and that Plaintiff was "able to perform activities of daily living without restrictions or limitations." *Id.*

### 5. Dr. Jasjit Singh

On March 13, 2012, Plaintiff treated with neurologist Dr. Jasjit Singh with complaints of neck pain radiating down his left arm and lower back pain radiating down his left leg. *Id.* at 187. Plaintiff's cervical spine was non-tender with a full range of motion, but his lumbar spine was tender with spasms. *Id.* at 188. Plaintiff's gait was normal, and he was "able to heel and toe

walk without restriction." *Id.* A sensory motor nerve conduction velocity study of Plaintiff's upper left arm revealed a "mild demyelinating ulnar nerve lesion around the left elbow," and an electromyography of Plaintiff's left arm was normal. *Id.* at 190. Dr. Singh's assessment was: "(1) lumbosacral radiculitis; (2) headaches, possibly cervicogenic in nature; and (3) traumatic left ulnar and left median nerve entrapment." *Id.* at 188. At an April 4, 2012 neurological follow up, Plaintiff continued to complain of tingling and numbness in his left arm, and had tenderness in his cervical spine. *Id.* at 185–86. Dr. Singh's assessment was "[l]eft ulnar nerve demyelization." *Id.*

Plaintiff returned to Dr. Singh on August 28, 2012 with complaints of neck pain radiating to both arms and lower back pain radiating to both legs. *Id.* at 182. Plaintiff had tenderness and spasms in his cervical and lumbosacral spine, and an MRI of Plaintiff's lumbosacral spine revealed an L5–S1 disc herniation on the left side. *Id.* Dr. Singh's assessments were cervical and lumbosacral radiculitis. *Id.* at 183.

### 6. Dr. Steven Litman

On May 1, 2012, Dr. Steven Litman of All Island Pain Consultants conducted an independent medical examination of Plaintiff. *Id.* at 252. Plaintiff reported that, following his accident, he had headaches, tingling numbness in his arms and legs, and pain in his neck, back, knees, left shoulder, and elbows. *Id.* Plaintiff had full range of motion, extension, rotation, and tilting of his cervical spine. *Id.* at 255. Dr. Litman observed that Plaintiff's straight-leg raising was positive at five (5) degrees, which was consistent with symptom amplification, as twenty-five (25) degrees is a normal result. *Id.* Dr. Litman also noted that there was strongly positive Hoover's sign bilaterally, which was consistent with malingering. *Id.* According to Dr. Litman,

Plaintiff displayed weak handgrip strength during the examination, but had strong handgrip strength at the end of the appointment. *Id.* At the end of the examination, Plaintiff had "no difficulty sitting in the chair, reaching down and picking up his socks and quickly putting on his socks and shoes." *Id.*

Dr. Litman's impression was "[m]ild cervical and lumbar sprain/strain, resolved." *Id.* He noted that there were "significant variabilities during different parts of [the] examination, consistent with malingering." *Id.* Dr. Litman further observed that Plaintiff's symptoms were "vague and there [was] significant symptom amplification." *Id.* He opined that there was no need for further treatment, and that chiropractic treatment "ha[d] been somewhat excessive." *Id.* at 256. He further concluded that Plaintiff could "return at once to full-time full-duty work" and "perform activities of daily living." *Id.*

### 7. Dr. Samir Dutta

On January 4, 2013, Plaintiff met with Dr. Samir Dutta of Industrial Medicine Associates, P.C. for an orthopedic examination. *Id.* at 222. Plaintiff complained of aching and throbbing pain in his right knee, sharp and throbbing pain in his lower back, and numbness in his left elbow and hand. *Id.* Plaintiff appeared to be in no acute distress, his gait was normal, and he did not require assistance changing for the examination or getting onto and off of the examination table. *Id.* Although Plaintiff's grip manipulation in his left hand was four (4) out of five (5) and paresthesia was noted in the left forearm and hand, he was able to "tie his shoe laces, button, and zip using both hands." *Id.* at 223–24. Plaintiff had no tenderness or spasms in his cervical spine, and slight tenderness and spasms in his lumbar spine. *Id.*

Dr. Dutta's diagnoses were "left ulnar neuritis below the elbow, post arthroscopy

left knee for meniscus injury tear repair, and disc degeneration L5–S1 with retrolisthesis L5–S1 with mass effect on left S1 nerve root with narrowing of foramen." *Id.* at 224. Dr. Dutta concluded that Plaintiff had "[m]ild limitation of sitting, standing, and walking and moderate limitation of lifting heavy weight." *Id.* Dr. Dutta also concluded that Plaintiff had "[m]ild limitations with prolonged and repetitive fine motor activity using the left hand." *Id.*

### D. ALJ Decision

The ALJ applied the five (5)–step sequential analysis set forth in 20 C.F.R. § 416.920(a), and concluded that Plaintiff was "not disabled" within the meaning of the Act. *Id.* at 30–38. At step one (1), the ALJ determined that Plaintiff had not engaged in substantial gainful activity during the relevant closed period. *Id.* at 32. At step two (2), the ALJ determined that Plaintiff's impairments of herniated discs, left knee torn meniscus, and a pinched nerve in the left elbow were "severe impairments" because they were "found to cause more than minimal functional limitations." *Id.* At step three (3), the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met the severity of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* The ALJ wrote, "[n]o treating, examining, or non-examining medical source has mentioned findings or rendered an opinion that the claimant's impairments, singly or in combination, medically equaled the criteria of any listed impairment." *Id.* at 32–33. The ALJ further concluded that Plaintiff had the residual functional capacity ("RFC") to perform the full range of "medium work" as defined in 20 C.F.R. § 416.967(c). *Id.* at 33. The ALJ's RFC assessment was "supported by conservative treatment history, essentially normal physical examination findings, the opinions of the treating and

independent examining physicians, as well as [Plaintiff's] own testimony regarding his activities of daily living." *Id.* at 37. Based on his determination that Plaintiff had the RFC to perform medium work, at step four (4), the ALJ concluded that Plaintiff "was capable of performing past relevant work as a museum attendant, telephone repairperson, sales clerk, or technical support specialist" because these positions do not "require the performance of work-related activities precluded by the claimant's residual functional capacity." *Id.* at 33, 37. Accordingly, the ALJ concluded that Plaintiff "has not been under a disability, as defined by the Social Security Act, at any time during the closed period from November 1, 2011 to February 1, 2013." *Id.* at 37.

## II. LEGAL STANDARD

### A. Fed. R. Civ. P. 12(c) Standard

Pursuant to Fed. R. Civ. P. 12(c), "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). In deciding a motion for judgment on the pleadings, "a court applies the familiar standard applicable to a Rule 12(b)(6) motion." *Polanco v. NCO Portfolio Mgmt., Inc.*, 930 F.Supp.2d 547, 549 (S.D.N.Y. 2013) (citing *Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010)). Therefore, to survive a motion pursuant to Rule 12(c), a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007)). A claim is considered plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678, 129 S.Ct. at 1949. The court must "accept as true all factual allegations set forth in the complaint and draw all reasonable inferences in favor of the plaintiff." *Polanco*, 930 F.Supp.2d at 550 (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 n.1, 122 S.Ct. 992, 995, 152 L.Ed.2d 1 (2002)). In deciding a motion for judgment on the pleadings, "the Court considers the complaint, the answer, any written documents attached to them, and any matter of which the Court can take judicial notice for the factual background of the case." *L–7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011) (internal quotation omitted). Where a motion for judgment on the pleadings is unopposed, "the court could grant [the] defendant's motion on default pursuant to Local Civil Rule 7.1." *Rashed v. Astrue*, No. 07–CV–2726, 2010 WL 3036795, at *3 (E.D.N.Y. July 30, 2010) (internal quotation omitted). However, where the non-movant is proceeding *pro se*, courts "award greater leniency" and should "review the administrative record, the ALJ's decision and the Commissioner's motion papers in making its determination." *Id.*

## B. Review of the Commissioner's Final Decision

Pursuant to 42 U.S.C. § 405, "[a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action ... in [a] district court of the United States ...." 42 U.S.C. § 405(g); *see also* 42 U.S.C. § 1383(c)(3) ("The final determination of the Commissioner of Social Security after a hearing under paragraph (1) shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title."). The Act further provides that "[t]he findings of the Commissioner ... as to any fact, if supported by substantial evidence, shall be conclusive ...." 42 U.S.C. § 405(g). Therefore, "a court may reverse the Commissioner's finding only if that finding 'is based upon legal error or is not supported by substantial evidence.' " *Marrero v. Apfel*, 87 F.Supp.2d 340, 345 (S.D.N.Y. 2000) (quoting *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999)); *see also Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984) ("The Secretary's findings of fact, if supported by substantial evidence, are binding.") (citing 42 U.S.C. § 405(g)). The Supreme Court has defined "substantial evidence" as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). In reviewing the Commissioner's final determination, a court "may not substitute its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." *Jones v. Sullivan*, 949 F.2d 57, 59 (2d Cir. 1991) (internal quotation omitted); *see also Schaal v. Apfel*, 134 F.3d 496, 504 (2d Cir. 1998) ("It is for the SSA, and not this court, to weigh the conflicting evidence in the record."). Although the Commissioner's findings of fact are binding as long as they are supported by substantial evidence, the court must ensure that the Commissioner has applied the correct legal standards, regardless of whether the Commissioner's decision is supported by substantial evidence. *See Pollard v. Halter*, 377 F.3d 183, 188–89 (2d Cir. 2004).

## III. DISCUSSION

Pursuant to 42 U.S.C. § 1382, "[a] claimant is entitled to SSI if they are (1) 'disabled' within the meaning of the Act and

(2) meet certain income limits." *Matthew v. Colvin,* No. 13–CV–5336, 2015 WL 5098662, at \*2 (E.D.N.Y. Aug. 31, 2015) (citing 42 U.S.C. § 1382(a)). The Commissioner determined that Plaintiff was not disabled within the meaning of the Act, and was therefore not entitled to SSI benefits. Tr. 37. Although Plaintiff neither opposed nor otherwise responded to the instant motion, in his Complaint, he alleges that "[t]he decision of the administrative law judge was erroneous, not supported by substantial evidence on the record and/or contrary to the law." Compl. ¶ 9. Applying the standards outlined above, the Court concludes that the ALJ's determination was supported by substantial evidence.

### A. Determination of Disability

An individual is "disabled" for purposes of receiving SSI benefits "if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to ... last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). The Act further provides that:

> [A]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . .

*Id.* at § 1382c(a)(3)(B).

In determining whether an individual is disabled, the Commissioner applies a "five-step sequential evaluation process" enumerated in the Act's implementing regulations (the "Regulations"). 20 C.F.R. § 416.920(a)(1). The Second Circuit has described the five (5)–step evaluation process as follows:

The first step of this process requires the Secretary to determine whether the claimant is presently employed. If the claimant is not employed, the Secretary then determines whether the claimant has a "severe impairment" that limits her capacity to work. If the claimant has such an impairment, the Secretary next considers whether the claimant has an impairment that is listed in Appendix 1 of the regulations. When the claimant has such an impairment, the Secretary will find the claimant disabled. However, if the claimant does not have a listed impairment, the Secretary must determine, under the fourth step, whether the claimant possesses the residual functional capacity to perform her past relevant work. Finally, if the claimant is unable to perform her past relevant work, the Secretary determines whether the claimant is capable of performing any other work.

*Brown v. Apfel,* 174 F.3d 59, 62 (2d Cir. 1999) (quoting *Perez v. Chater,* 77 F.3d 41, 46 (2d Cir. 1996)); *see also* 20 C.F.R. § 416.920(a)(4) (describing the evaluation process). The claimant bears the burden of establishing the first four (4) steps, and the Commissioner bears the burden as to the fifth. *Echevarria v. Apfel,* 46 F.Supp.2d 282, 293 (S.D.N.Y. 1999). In making its disability determination, the Commissioner must consider: "(1) the objective medical facts; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability testified to by the claimant or others; and (4) the claimant's educational background, age, and work experience." *Mongeur v. Heckler,* 722 F.2d 1033, 1037 (2d Cir. 1983).

### B. Application of Five–Step Analysis

In denying Plaintiff's application for SSI benefits, the ALJ correctly applied the five

(5)–step sequential analysis. Tr. 32–38; *see also Morales v. Colvin*, No. 13 Civ. 4302, 2014 WL 7336893, at *10 (S.D.N.Y. Dec. 24, 2014). Although Plaintiff satisfied the first two (2) steps of the analysis, the ALJ determined that Plaintiff had the RFC to perform the full range of medium work as defined in 20 C.F.R. § 416.967(c), and was therefore able to perform his past relevant work. Tr. 33–37. Accordingly, the ALJ determined that Plaintiff was not disabled within the meaning of the Act. *Id.* Upon review of the administrative record, the Court concludes that the ALJ's determination that Plaintiff was not disabled was supported by substantial evidence.

 In determining that Plaintiff was capable of performing the full range of medium work, the ALJ gave "significant weight" to the opinion evidence provided by Dr. Wolin and Dr. Litman, and gave "little weight" to Dr. Dutta's conclusion that Plaintiff had "mild limitations in sitting, standing, and walking, and moderate limitation in heaving lifting." *Id.* at 33–37. According to the ALJ, Dr. Dutta examined Plaintiff more than two (2) months after the closed period of disability ended, and Dr. Dutta's opinion regarding Plaintiff's limitations was "not supported by the objective evidence of record or the doctor's own physical examination findings." *Id.* at 37. The Second Circuit has held that an ALJ is "free to resolve issues of credibility as to lay testimony or to choose between properly submitted medical opinions ...." *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998) (quoting *McBrayer v. Secy. of Health & Human Servs.*, 712 F.2d 795, 799 (2d Cir. 1983)). Therefore, the ALJ properly credited the opinion evidence of Dr. Wolin and Dr. Litman over that of Dr. Dutta.

At his February 7, 2012 examination of Plaintiff, Dr. Wolin observed that Plaintiff's neck was neither swollen nor red, and that Plaintiff did not have paraspinal tenderness or spasm. Tr. 273. Dr. Wolin further observed that Plaintiff had normal range of motion, extension, and bending in his lumbar spine. *Id.* These observations, as well as the absence of any other identified abnormalities, support Dr. Wolin's opinion that Plaintiff had a "resolved sprain/strain of the cervical and lumbar spine," and that there was "no evidence of a disability at [that] time." *Id.* at 273–74. Similarly, Dr. Litman's observation that Plaintiff had full range of motion, extension, rotation, and tilting of his cervical spine, as well as his observation that Plaintiff displayed indicia of malingering, support his opinion that there were "no objective findings ... consistent with any dermatomal distribution or sensory motor loss," and that Plaintiff could return to full-time duty at once and perform all activities of daily living. *Id.* at 255–56.

 Although the ALJ considered Plaintiff's statements regarding the intensity, persistence, and limiting effects of his symptoms, and their effect on his ability to work during the closed disability period, he concluded that they were not credible to the extent that they were inconsistent with the RFC assessment. *Id.* at 33–37. Whereas Plaintiff testified at the November 26, 2013 hearing that he was unable to work prior to February 2013 because pain in his "back, shoulder, elbow, [and] knee" was "preventing [him] from ... doing certain things," *see id.* at 11, Dr. Litman observed "significant symptom amplification," and "significant variabilities during different parts of [his] examination, consistent with malingering." *Id.* at 255. As "it is the responsibility of the Commissioner and not of the reviewing court to assess a claimant's creditability," *Haug v. Apfel*, No. 99 Civ. 443, 2000 WL 178212, at *7 (S.D.N.Y. Feb. 16, 2000), an administrative law judge may "properly reject claims of

severe, disabling pain after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility." *Echevarria*, 46 F.Supp.2d at 292. Therefore, the ALJ appropriately credited the opinions of Dr. Wolin and Dr. Litman over Plaintiff's self-serving testimony regarding the severity of his pain. *See also Marrero*, 87 F.Supp.2d at 347 ("[T]he ALJ was well within his ken to choose among ... varying opinions to find that [the plaintiff] was malingering based on the substantial evidence before him, and to discredit any contrary testimony from [the plaintiff].").

Based on the ALJ's determination that Plaintiff was able to perform all activities of daily living and return to full-time duty at once, as well as the vocational expert's testimony that Plaintiff's past relevant experience involved light to medium work as defined by 20 C.F.R. § 416.967, the ALJ determined that Plaintiff was "capable of performing past relevant work," and was therefore not disabled. *Id.* at 37–38. As substantial evidence supported the ALJ's determination that Plaintiff was not disabled during the closed period from November 1, 2011 until February 1, 2013, his decision must be upheld.

## IV. CONCLUSION

For the reasons set forth herein, Defendant's motion for judgment on the pleadings is granted, and the Commissioner's determination denying Plaintiff SSI benefits is affirmed. The Clerk of the Court is directed to close this case.

**SO ORDERED.**

